# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| | |
|---|---|
| Michael Hood, individually, and on behalf of all others similarly situated, | Civil Action No. 1:16-cv-998-CCE-JLW |
| Plaintiffs, | **MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF'S UNOPPOSED MOTION FOR APPROVAL OF FLSA SETTLEMENT AND DISMISSAL OF ACTION WITH PREJUDICE** |
| vs. | |
| Uber Technologies, Inc., Rasier, LLC, and John Does I-V, | |
| Defendants. | |

Michael Hood respectfully submits this memorandum of law in support of his unopposed motion for approval of the settlement agreement between him, on behalf of all Plaintiffs that opted into this Fair Labor Standards Act (FLSA) action, and Defendants Uber Technologies, Inc. and Rasier, LLC.

## PRELIMINARY STATEMENT

The parties zealously litigated this action at every stage. They engaged in extensive motion practice in relation to Defendants' motion to dismiss and two motions to compel arbitration, Hood's motion for conditional certification, and a variety of secondary issues. They went through a 90-day opt-in process where over 5,000 drivers joined the case. They analyzed extensive data that Defendants produced for each of those drivers, so that they could calculate damages under a variety of scenarios. They negotiated before an experienced wage-and-hour mediator and conducted further private, arm's-length discussions after mediation. Only then did the parties finally come to a fair and reasonable settlement, which appropriately balances the risks and costs of continuing to litigate against the likely benefits

to Plaintiffs. On this motion, Hood requests the Court's approval of this settlement agreement, which includes payment of attorneys' fees, litigation expenses, and a service award.

## STATEMENT OF FACTS

**I. The parties engaged in extensive motion practice prior to settlement.**

Hood filed the complaint on July 26, 2016. (Declaration of Paul B. Maslo ¶ 2.) In response to Defendants' motion to dismiss, Hood filed an amended complaint. (*Id.* ¶¶ 3, 4.) Defendants then moved to dismiss all but the FLSA claims in the amended complaint. (*Id.* ¶ 5.) On January 24, 2017, the Court granted in part Defendants' motion to dismiss, allowing Hood's claims under the North Carolina Wage and Hour Act (NCWHA) to move forward, in addition to the FLSA claims that Defendants did not challenge. (*Id.* ¶ 7.) The parties subsequently stipulated to dismissing Hood's NCWHA claims because they were duplicative of his FLSA claims. (*Id.* ¶ 21.)

In early 2017, the parties briefed two motions to compel regarding several drivers that had joined the case but had not properly opted out of the arbitration provision in the driver agreement. (*Id.* ¶¶ 6, 8, 14.)

On February 3, 2017, Hood moved to conditionally certify a collective consisting of "[a]ll natural persons who have worked or who continue to work as Uber Drivers anywhere in the United States and who have opted out of arbitration." (*Id.* ¶ 9.) The parties completed briefing on the conditional-certification motion in March. (*Id.* ¶¶ 12, 13.)

Later that month, counsel for plaintiff in *Rojas v. Uber Technologies, Inc.*, No. 1:16-cv-23670 (S.D. Fla.), another action where plaintiff moved to conditionally certify a nationwide FLSA

2

collective, informed Plaintiffs' counsel, Paul B. Maslo, that they planned to file for an MDL and asked whether he was interested in working together. (*Id.* ¶ 15.) Plaintiffs' counsel declined their invitation and, working alongside Defendants' counsel, opposed their motion for consolidation before the Judicial Panel on Multidistrict Litigation ("JPML"). (*Id.*) This required Plaintiffs' counsel to submit two briefs and present oral argument. (*Id.*)

On May 30, the JPML denied the motion for consolidation. (*Id.* ¶ 17.) Less than a month later, on June 27, the court denied Rojas' motion for conditional certification. (*Id.* ¶ 18.) The next day, Defendants submitted the decision as supplemental authority in this case, and Hood responded with a submission (which was later stricken) distinguishing it. (*Id.* ¶¶ 18, 19, 22.)

On July 12, the Court granted Hood's motion for conditional certification in its entirety. (*Id.* ¶ 20.)

The following month, the parties briefed notice issues (*e.g.*, the types of notice that would be used and the length of the opt-in period) and subsequently reached a compromise on those issues in January 2018. (*Id.* ¶¶ 23, 24.)

In February 2018, counsel for plaintiffs in *Haider v. Uber Technologies, Inc.*, No. 16-cv-4098 (AKH) (S.D.N.Y.), another FLSA action where plaintiff moved to conditionally certify a nationwide collective, attempted to stay the issuance of notice in this case and coordinate the actions. (*Id.* ¶ 25.) Plaintiffs' counsel, working with Defendants' counsel, successfully opposed their attempt to disrupt the issuance of notice in this case. (*Id.*) Notably, like the court in *Rojas*, the *Haider* court ultimately denied plaintiff's motion for conditional

3

certification. (*Id.* ¶ 25 & Ex. 1.) Thus, Plaintiffs' counsel is the only one that has successfully conditionally certified a nationwide FLSA collective of Uber drivers.

During the 90-day opt-in period, over 5,000 drivers joined this case. (*Id.* ¶ 26.)

On June 25, the parties mediated before Mark Rudy in San Francisco. (*Id.* ¶ 27.) Rudy has successfully mediated numerous high-profile labor and employment cases. (*Id.*) The parties reached a preliminary settlement agreement during the mediation. (*Id.*)

The settlement agreement was finalized over the next three months. (*Id.* ¶ 28 & Ex. 2.)

## II. The likely damages ceiling in this case is low.

Defendants produced extensive pre-mediation discovery, which allowed counsel to calculate damages under multiple scenarios for the Plaintiffs who joined this action. (*Id.* ¶ 51.) Specifically, they produced the following information for each weekly pay period for all Plaintiffs: the amount that Defendants paid them; the time spent logged onto the Uber application and available to receive ride requests; the time spent en route to pick up passengers; the time spent transporting passengers; and the distance driven while transporting passengers. (*Id.*) In total, Defendants produced 322,215 lines of data (with each line corresponding to one workweek for a single Plaintiff). (*Id.*)

Utilizing that data, Plaintiffs' counsel calculated that the likely damages ceiling in this action is $3,374,894. (*Id.* ¶ 52.) Notably, that number assumes that all the time when drivers were logged onto the Uber application and available to receive ride requests—including time when they were also logged onto the applications of Defendants' competitors, taking naps, eating, running personal errands, etc.—is compensable. (*Id.*) If either the Court or a jury found that this "wait time" is not compensable, maximum damages for the entire collective

4

would likely be less than $100,000. (*Id.*) The maximum damages number also assumes that the collective members would survive decertification and successfully convince the Court at summary judgment and a jury at trial that they were misclassified as independent contractors. (*Id.*) If Plaintiffs failed to clear either of these two significant hurdles, then damages would be zero.

### III. Plaintiffs' counsel is well qualified.

Napoli Shkolnik PLLC specializes in class-action, mass-tort, and commercial litigation. (*Id.* ¶ 29.) It is a nationally-recognized firm that has handled numerous high-profile cases across the United States. (*Id.* ¶ 30.) The firm has achieved several groundbreaking settlements on behalf of its clients (*e.g.*, recovering more than $1 billion in the Phen-Fen litigation). (*Id.* ¶ 31.)

Paul Maslo, a partner at Napoli Shkolnik and head of its class action and commercial litigation group, has led this litigation. He has extensive experience representing plaintiffs in litigation involving employment law, as well as in numerous other areas. (*Id.* ¶¶ 32, 33.) Prior to joining Napoli Shkolnik as a partner, he was a litigation associate at Boies Schiller Flexner LLP. (*Id.* ¶ 34.)

In addition to litigating complex high-profile cases, Paul has published in several well-regarded law reviews and legal journals. (*Id.* ¶ 36.) Paul was named a New York Super Lawyers Rising Star in Commercial Litigation in 2017 and 2018. (*Id.* ¶ 37.) He earned his J.D. at the University of Pennsylvania Law School, M.S. in Biology at Johns Hopkins University, and A.B. in Biology in the College of Arts & Sciences at Cornell University. (*Id.* ¶ 38.) While a law student, he also studied finance at the Wharton School of Business. (*Id.*)

5

Andrew Dressel, a former senior associate at Napoli Shkolnik, also earned his law degree at the University of Pennsylvania and was a litigation associate at Boies Schiller before joining the firm. (*Id.* ¶ 39.) He was named a New York Super Lawyers Rising Star in Commercial Litigation in 2017 and 2018. (*Id.*)

Brittany Weiner, a partner at Imbessi Law P.C., is an accomplished litigator in the employment space, with good academic credentials. (Declaration of Brittany Weiner ¶¶ 4, 5, 7.) She has been selected as a Super Lawyer for each of the past three years. (*Id.* ¶ 9.) Her law firm has served as class counsel in numerous litigations. (*Id.* ¶¶ 11, 12.)

Paul R. Dickinson, Jr., currently an associate at DeMayo Law Offices LLP (and formerly a partner at Lewis & Roberts, PLLC), is an accomplished, well-respected attorney with excellent credentials, including being selected as a Super Lawyer on multiple occasions, and extensive experience litigating FLSA collective actions. (Declaration of Paul R. Dickinson, Jr. ¶¶ 1-13.)

## IV. Counsel's fees and expenses for litigating this complex case are reasonable.

Paul Maslo did most of the work on this case, including virtually all research and drafting. (*Id.* ¶ 40.) As such, he billed 841.4 hours, not counting the time he spent drafting this motion for approval of the settlement. (*Id.* ¶ 41 & Ex. 3.) His standard hourly billing rate is $850. (*Id.*) Indeed, he is currently being paid this rate in an employment matter against Credit Suisse where he represents a group of private bankers. (*Id.* ¶ 41.) Thus, his time on this matter is worth 841.4 x $850 = $715,190. (*Id.*)

6

Andrew Dressel billed 239.3 hours on this matter. (*Id.* ¶ 42 & Ex. 4.) His standard hourly billing rate is $550. (*Id.* ¶ 42.) Thus, his time on this matter is worth 239.3 x $550 = $131,615. (*Id.*)

Paul Dickinson billed 180.45 hours at an hourly rate of $385. (Dickinson Decl. ¶¶ 14-16 & Ex. A.) Thus, his time on this matter is worth 180.45 x $385 = $69,473.25.

Brittany Weiner billed 64.90 hours at an hourly rate of $5000. (Weiner Decl. ¶¶ 13, 14 & Ex. A.) Thus, her time on this matter is worth 64.9 x $350 = $32,450.

Harold May, a paralegal at Napoli Shkolnik, billed 130.3 hours on this matter. (Maslo Decl. ¶ 43 & Ex. 5.) His standard hourly billing rate in $125. (*Id.* ¶ 43.) Thus, his time on this matter is worth 130.3 x $125 = $16,287.50. (*Id.*)

The litigation expenses include, for example, mediation fees ($7,500); travel to and from hearings and the mediation, as well as lodging, accommodations, and other related expenses ($9,736.18); The GEC Group, an economics firm that assisted with the damages calculations used in the mediation and during settlement negotiations ($8,446.23); Angeion Group, the third-party administrator that provided notice to collective members and managed the opt-in process ($62,359.93); and various miscellaneous charges. (*Id.* ¶ 45 & Ex. 6.)

## V. Named Plaintiff was an active participant throughout the litigation.

Hood has actively participated in this litigation. (*Id.* ¶ 46.) Prior to filing this case, he did an extensive amount of work gathering documents and summarizing relevant facts for the complaint. (*Id.* ¶ 47.) He also reviewed the complaint before filing. (*Id.*) Hood has kept in contact with counsel and has been available to answer questions at every stage of the case.

7

(*Id.* ¶ 48.) He advocated for class members and always put their interests before his own. (*Id.* ¶ 49.) He reviewed the settlement agreement to ensure that it is fair. (*Id.* ¶ 50.)

## VI. The settlement agreement's terms are fair.

The maximum gross settlement amount is $1,304,250. (Settlement Agreement § 1.15, Maslo Decl. Ex. 2.) This amount "shall be allocated to the Section 216(b) Settlement Amount, the Service Payment Allocation, the Attorney's Fees Payment, the Attorney's Expenses Payment, and the Administrative Costs[.]" (*Id.*) Specifically, $734,294.79 will be paid to Plaintiffs that have opted into the litigation, $5,000 will compensate Hood for the services he rendered on behalf of the FLSA collective, $434,750 will be paid in attorneys' fees, $90,205.21 will go towards litigation expenses, and $40,000 will be paid to Garden City Group, the settlement administrator. (*Id.* §§ 1.15(a)-(e).)

As shown in Ex. A to the settlement agreement, each Plaintiff will receive at least $50. The remaining Section 216(b) Settlement Amount is then distributed to Plaintiffs pro rata based on their actual damages.

## <u>LEGAL STANDARD</u>

A plaintiff may settle and release FLSA claims against an employer by obtaining court approval. *See Taylor v. Progress Energy, Inc.*, 415 F.3d 363, 374 (4th Cir. 2005). "Courts greatly favor the settlement[] of cases and allowing litigants to achieve their own resolution of disputes." *Faile v. Lancaster County*, No. 0:10-cv-02809-CMC, 2012 U.S. Dist. LEXIS 189610, at *12 (D.S.C. Mar. 8, 2012) (*citing Lomascolo v. Parsons Brinckerhoff, Inc.*, No. l:08-cv-1310 (AJT/JFA), 2009 U.S. Dist. LEXIS 89129, at *10 (E.D. Va. Sept. 28, 2009)).

8

"A one-step settlement approval process is appropriate for this FLSA . . . collective action[] and has been used in other collective actions." *Day v. NuCO2 Mgmt., LLC*, No. 1:18-cv-02088, 2018 WL 2473472, at *1 (N.D. Ill. May 18, 2018) (collecting cases). "Because the failure to opt in to an FLSA lawsuit does not prevent potential members of the collective from bringing their own suits in the future, FLSA collective actions do not implicate the same due process concerns as do Rule 23 actions." *Id.* (citation omitted). *See also Osman v. Grube, Inc.*, No. 3:16-cv-00802-JJH, 2018 WL 2095172, at *2 (N.D. Ohio May 4, 2018) (endorsing and employing the one-step FLSA settlement approval process).

When approving a settlement, the court must determine whether the agreement reflects a "fair and reasonable resolution of a *bona fide* dispute over FLSA provisions." *Taylor*, 415 F.3d at 374. Courts generally consider the following factors in determining whether the resolution is fair and reasonable: "(1) the extent of discovery that has taken place; (2) the stage of the proceedings, including the complexity, expense and likely duration of the litigation; (3) the absence of fraud or collusion in the settlement; (4) the experience of counsel who have represented the plaintiff; (5) the probability of plaintiff's success on the merits and the amount of the settlement in relation to the potential recovery." *In re Dollar Gen. Stores FLSA Litig.*, No. 5:09-MD-1500, 2011 WL 3904609, at *2 (E.D.N.C. Aug. 23, 2011) (quotation marks omitted).

Where the settlement agreement provides for an award of attorneys' fees, the court also examines whether that amount is reasonable. *Id.*

## I. The parties have *bona fide* FLSA disputes.

As reflected in prior motion practice, Plaintiffs argue that they are misclassified as independent contractors and are really employees. As such, they should be entitled to minimum wage and overtime. They also contend that wait time is compensable. Defendants take the opposite position on both issues. These two disputes are the tip of iceberg. "Thus, there are genuine disputes that support the concept of a negotiated settlement of this FLSA claim." *Rivera v. Dixson*, No. TDC-14-cv-2901, 2015 WL 427031, at *3 (D. Md. Jan. 30, 2015).

## II. The settlement agreement represents a fair and reasonable resolution of the parties' disputes.

The settlement agreement fairly and reasonably resolves this case: (A) the parties engaged in significant settlement-related discovery; (B) settling now will allow the parties to achieve a resolution of this litigation before they incur substantial discovery, motion, and trial-related expenses; (C) the parties engaged in arm's-length settlement negotiations with the assistance of a well-qualified mediator; (D) Plaintiffs' counsel is well-credentialed and has ample experience in wage-and-hour litigation; and (E) the amount of the settlement properly reflects the relative merits of Plaintiffs' claims and Defendants' defenses, in light of the risks and uncertainty of the litigation.

### A. The parties engaged in extensive discovery before settlement.

While the parties have not begun formal discovery, prior to mediation Defendants produced a spreadsheet with 322,215 lines of data that allowed counsel to calculate weekly damages under a variety of scenarios for every Plaintiff. The parties examined this damages

10

information, as well as the evidence Defendants' submitted with their opposition to Hood's motion for conditional certification and the robust summary judgement records in *O'Connor v. Uber Technologies, Inc.*, 82 F. Supp. 3d 1133 (N.D. Cal. 2015), *Razak v. Uber Technologies, Inc.*, No. 16-cv-573, 2017 WL 4052417 (E.D. Pa. Sep. 13, 2017), and *Razak v. Uber Technologies, Inc.*, No. 16-cv-573, 2018 WL 1744467 (E.D. Pa. Apr. 11, 2018). Thus, "the parties have had adequate time to assess each other's claims and defenses, and to properly weigh the benefits of a settlement before trial." *In re Dollar Gen. Stores FLSA Litig.*, 2011 WL 3904609, at *3. Additional discovery would not have a material impact on the parties' respective views of the case.

**B. Settling now would allow the parties to avoid the enormous expenses related to discovery, further motion practice, and trial.**

Over 5,000 drivers have opted into this litigation. If the parties were to take discovery on only 10% of them, that would still mean over 500 sets of discovery requests, document productions, and depositions. Discovery of that magnitude would take several years and cost millions of dollars. This complex case would also require the use of numerous experts. In addition, at the end of discovery Defendants would undoubtedly file a motion for decertification and, if Plaintiffs survived, summary judgment on the issues of whether Plaintiffs are properly classified as independent contractors and the compensability of wait time. These motions would cost hundreds of thousands of dollars. Finally, if Plaintiffs survived that onslaught, the parties would have substantial trial expenses.

"Therefore, the settlement[], if approved, would enable the[] [parties] to avoid the time and expense of further litigation to resolve the moving [P]laintiffs' claims, whether through summary judgment or trial." *In re Dollar Gen. Stores FLSA Litig.*, 2011 WL 3904609, at *3. *See*

*also Devine v. City of Hampton, Virginia*, No. 4:14-cv-81, 2015 WL 10793424, at *2 (E.D. Va. Dec. 1, 2015) ("The parties also litigated certification in a contested motion resolved before settlement. Both the discovery conducted, and the stage of proceedings, suggest the parties' decision to settle was well informed.").

### C. There has been no fraud or collusion.

The parties have vigorously litigated every stage of this case: Hood even opposed Defendants' request to file an oversize opposition brief in response to his motion for conditional certification. (Maslo Decl. ¶ 11.) *See, e.g.*, *In re Dollar Gen. Stores FLSA Litig.*, 2011 WL 3904609, at *3 ("The court finds that there is a complete absence of evidence of fraud or collusion. It is clear from the record and the undersigned's numerous interactions with counsel that while they were professional in their dealings with one another, they zealously pursued their respective clients' interests.").

Extensive arm's-length negotiations between experienced counsel and use of a mediator are further evidence that the settlement was not collusive. *See, e.g.*, *Day*, 2018 WL 2473472, at *1 ("Here, the settlement meets the standard for approval. The settlement was the result of pre-suit investigation and substantial arm's-length negotiations over disputed issues between counsel well versed in wage and hour law, with the assistance of a neutral mediator."); *Devine*, 2015 WL 10793424, at *2 (finding no fraud or collusion because "[t]he settlement reached by the parties . . . was concluded following arms-length negotiation, during which both sides were represented by experienced counsel," and "[t]he parties also participated in multiple meetings with Magistrate Judge Lawrence R. Leonard to facilitate the mediated settlement"); *Villegas v. J.P. Morgan Chase & Co.*, No. 09-cv-00261 SBA EMC, 2012 WL 5878390, at *6

(N.D. Cal. Nov. 21, 2012) ("[T]he Settlement was reached following two sessions with a private mediator experienced in wage and hour class actions. This tends to support the conclusion that the settlement process was not collusive.").

Accordingly, there is no evidence of fraud or collusion.

**D. Plaintiffs' counsel is well qualified and experienced.**

As provided above, Plaintiffs are represented by well-credentialed attorneys with significant labor-and-employment experience. *See, e.g.*, *In re Dollar Gen. Stores FLSA Litig.*, 2011 WL 3904609, at *3 (approving settlement where counsel had "significant experience handling matters such as the instant litigation"). Moreover, because "settlement negotiations took place at arm's-length between highly experience[d] and competent counsel[,] [t]heir assessment of the settlement as fair and reasonable is entitled to considerable weight." *In re Rent-Way Sec. Litig.*, 305 F. Supp. 2d 491, 509 (W.D. Pa. Dec. 22, 2003). *See also Devine*, 2015 WL 10793424, at *2 ("In evaluating a settlement a court is entitled to rely on the judgment of experienced counsel for the parties and should hesitate to substitute its own judgment for that of counsel. Counsel believe the settlement is fair and reasonable, and although the court is not bound by counsel's opinion, it is nonetheless entitled to great weight.") (quotation marks, text alterations, ellipses, and citation omitted).

**E. The settlement amount is fair given the risks of litigation and projected recovery.**

The settlement agreement reflects an exceptional result for Plaintiffs. The risks and costs of continued litigation are high. Defendants would vigorously defend this action on the merits, and there is a significant chance that they would prevail. For example, the court in *Razak*, 2018 WL 1744467, found at summary judgment that drivers were independent

13

contractors as a matter of law. *See, e.g., In re Dollar Gen. Stores FLSA Litig.*, 2011 WL 3904609, at *3 ("[The court] has evaluated [the settlement] in light of the probability of the moving plaintiffs' success, taking into account specifically the entry of summary judgment by . . . other courts against plaintiffs in cases similar to those at issue. The court concludes that the amounts payable to the moving plaintiffs under the settlement agreement[] are fair and reasonable under the circumstances presented."). If that occurred here, or if Plaintiffs survived summary judgment but a jury ruled against them on the misclassification issue at trial, Plaintiffs would get nothing. There is a similar risk that the Court would also decide at summary judgment—or a jury at trial—that wait time is not compensable. That would result in Plaintiffs' total damages being less than $100,000.

In addition, based on the evidence that Defendants submitted in support of their opposition to the motion for conditional certification, there is a very real risk that the Court would grant their decertification motion. (*See, e.g.,* Defendant's Brief in Opposition to Motion for Conditional Certification [Dkt. No. 85].) In that case, Plaintiffs would be forced to file individual actions, which, for financial reasons, would likely not be possible. In other words, it would probably be the end of the road for them.

Considering these litigation risks, the settlement amount is substantial: $1,304,250 is 38.6% of $3,374,894 (the likely damages ceiling). *See, e.g., Dillworth v. Case Farms Processing, Inc.*, No. 5:08-cv-1694, 2010 WL 776933, at *8 (N.D. Ohio Mar. 8, 2010) ("There can be no doubt that the results achieved for the class members are exceptional. The Individual Payments to participants represent approximately one-third of claimed unpaid wages, before

14

deduction of attorneys' fees and expenses. Such an allocation is well above the 7% to 11% average result achieved for class members.").

Thus, the settlement agreement fairly and reasonably resolves Plaintiffs' claims. *See, e.g.*, *Anderson v. Sara Lee Corp.*, No. 4:03-cv-00031-H, 2013 WL 12250391, at *1 (E.D.N.C. May 16, 2013) ("The Court further finds the settlement was negotiated at arm's length by the parties and is a fair and reasonable resolution of the claims asserted and released by the Plaintiffs, in light of the parties' respective prospects for success (or failure) were the case to proceed to trial on the merits.").

### III. The requested payments for attorneys' fees and expenses are reasonable.

Courts routinely award counsel 1/3 of the gross common fund as attorneys' fees and reimbursement of litigation expenses.

"On the question of attorneys' fees, . . . in a common fund case such as this, a reasonable fee is normally a percentage of the Class recovery." *Smith v. Krispy Kreme Doughnut Corp.*, No. 1:05-cv-00187, 2007 WL 119157, at *1 (M.D.N.C. Jan. 10, 2007). To determine the reasonableness of the fee award, courts consider the following factors, which were adopted by the Fourth Circuit in *Barber v. Kimbrell's Inc.*, 577 F.2d 216, 226 (4th Cir. 1978): "(1) time and labor expended; (2) novelty and difficulty of the questions raised; (3) skill required to properly perform the legal services; (4) attorney's opportunity costs in pressing the litigation; (5) customary fee for like work; (6) attorney's expectation at the outset of litigation; (7) time limitations imposed by the client or circumstances; (8) amount in controversy and results obtained; (9) experience, reputation and ability of the attorney; (10) undesirability of the case within the legal community in which the suit arose; (11) nature and length of the

professional relationship between the attorney and client; and (12) fee awards in similar cases." *Smith*, 2007 WL 119157, at *1.

Application of these factors overwhelmingly supports awarding Plaintiffs' counsel 1/3 of the gross common fund as attorneys' fees:

| Factor | Application |
|---|---|
| Time and labor | In total, Plaintiffs' counsel devoted 1,456.35 hours of attorney and paralegal time to this matter. *See, e.g.*, *id.* at *2 ("Class Counsel dedicated significant time and effort to pursuing litigation on behalf of the class. The time and labor expended to date (at least 1089 hours of attorney time and 772 hours of paralegal time) tends to support the reasonableness of the requested fee award."). |
| Novelty and difficulty | The main issue in this case—whether Plaintiffs, members of the gig economy, are misclassified as independent contractors—involves a "highly complex and quickly-evolving area of the law," which "tends to support the reasonableness of the requested fee award." *Id.* The difficulty of this matter is also evidenced by the extensive motion practice between the parties, which included briefing on a motion to dismiss, two motions to compel arbitration, a motion for conditional certification, and a variety of secondary issues. Moreover, only Plaintiffs' counsel has been able to conditionally certify a nationwide collective of Uber drivers. Counsel in both *Rojas* and *Haider* attempted to do so as well, but they failed. Finally, Plaintiffs' counsel had to fight off counsel in other actions who moved for an MDL and attempted to intervene in this case to prevent the issuance of notice. |
| Required skill | Dealing with the novel issues involved in this case, managing a large national collective action, and litigating against sophisticated counsel all cut in favor of approving the fee request. *See, e.g.*, *id.* ("The Court recognizes that it takes skilled counsel to manage a nationwide class action, carefully analyze the facts and legal claims and defenses under ERISA, and bring a complex case to the point at which settlement is a realistic possibility. Additional skill is required when the opponent is a sophisticated corporation with sophisticated counsel. This factor tends to support the reasonableness of the requested fee award."). |
| Opportunity costs | "As it is unquantified, this factor does not tend to support the reasonableness of the requested fee award." *Id.* |

Case 1:16-cv-00998-CCE-JLW   Document 424-1   Filed 10/16/18   Page 16 of 22

| | |
|---|---|
| Customary fee | "In this jurisdiction, contingent fees of one-third (33%) are common. This factor provides support for the reasonableness of the requested fee award." *Id.* |
| Attorneys' expectation | "Class Counsel have informed the Court that their expectation at the outset of this case was that Defendants would present a vigorous defense. [Maslo Decl. ¶ 44.] Indeed, Defendants filed comprehensive motions to dismiss, which is consistent with the expectation of Class Counsel. This factor tends to support the reasonableness of the requested fee award." *Smith*, 2007 WL 119157, at *2. |
| Time limitations | There were many times when the demands of this litigation prevented Plaintiffs' counsel from taking on other work. (Maslo Decl. ¶ 44.) *See, e.g., Smith*, 2007 WL 119157, at *2 ("Class Counsel notes that there were many times when the demands of this litigation precluded other paying work. This factor tends to support the reasonableness of the requested fee award."). |
| Amount in controversy and results | As provided above, "[t]he proposed settlement, considered as a percentage of the conservatively-estimated potential recovery, represents a highly favorable recovery for the . . . Class. This factor tends to support the reasonableness of the requested fee award." *Id.* |
| Experience and reputation | "The experience, reputation and ability of Class Counsel strongly supports the reasonableness of the requested fee award." *Id.* at *3. For example, as noted by the *Smith* court, "Lewis & Roberts P.L.L.C. [Paul Dickinson's firm for most of this litigation] has an outstanding reputation in this District." *Id.* |
| Undesirability of case | There has been significant interest in suing Defendants. *Id.* |
| Length of relationship between attorneys and client | "Class Counsel did not have professional relationships with [the] Named Plaintiff prior to this litigation. This factor tends to support the reasonableness of the requested fee award." *Id.* |
| Fee awards in similar cases | There are numerous cases awarding class counsel 1/3 of the gross common fund as attorneys' fees. *See, e.g., Day*, 2018 WL 2473472, at *2 ("The Court grants Plaintiffs' Counsel's request for one-third of the $900,000 Gross Settlement Amount ($300,000) as reasonable attorneys' fees. Courts in the Northern District of Illinois often have approved one-third of the settlement fund as attorneys' fees in FLSA collective actions. The Seventh Circuit has instructed district courts to award attorneys' fees that approximate the market rate. One-third of the total settlement fund is consistent with market rate in the Northern District of Illinois charged by experienced plaintiffs' |

counsel in contingent-fee wage and hour class and collective actions.") (citations omitted); *Thompson v. Qwest Corp.*, No. 17-cv-1745-WJM-KMT, 2018 WL 2183988, at *3 (D. Colo. May 11, 2018) ("In situations such as this, where the Proposed Settlement creates a common fund, attorneys' fees of one-third or thereabouts are generally deemed reasonable."); *Osman*, 2018 WL 2095172, at *3 ("One-third of the common fund is a reasonable attorneys' fee award and has been approved in similar FLSA collective actions in this judicial district.") (quotation marks omitted); *Graudins v. Kop Kilt, LLC*, No. 14-cv-2589, 2017 WL 736684, at *11 (E.D. Pa. Feb. 24, 2017) ("[T]he requested attorneys' fees of one third of the Settlement Fund are well within the range of fees awarded in similar cases."); *Devlin v. Ferrandino & Son, Inc.*, No. 15-cv-4976, 2016 WL 7178338, at *9 (E.D. Pa. Dec. 9, 2016) ("An award of approximately one-third of the common fund as an attorney's fee to class counsel is common in FLSA class action settlements."); *Bozak v. FedEx Ground Package Sys., Inc.*, No. 3:11-cv-00738-RNC, 2014 WL 3778211, at *6 (D. Conn. July 31, 2014) ("The Court awards Plaintiffs' Counsel . . . one-third of the Gross Settlement Amount. This amount is reasonable. Fee awards in wage and hour cases are meant to encourage members of the bar to provide legal services to those whose wage claims might otherwise be too small to justify the retention of able, legal counsel. Adequate compensation for attorneys who protect wage and hour rights furthers the remedial purposes of the FLSA.") (quotation marks and citations omitted).

"It is not necessary for the Court to conduct a lodestar analysis, but if one were to 'cross-check' the requested [33.33]% fee against the range of reasonable fee awards under a lodestar analysis, it is apparent that a 'lodestar cross-check' confirms the reasonableness of the requested percentage fee." *Smith*, 2007 WL 119157, at *3. Here, Plaintiffs' counsel devoted 1,456.35 hours of attorney and paralegal time to this matter, which has a value of $965,015.75—*significantly more* than the $434,750 in fees that they are requesting. Even if the Court cuts counsel's hourly rates in half, the value of their services surpasses the fee request. *See, e.g., Bozak*, 2014 WL 3778211, at *7 ("Courts regularly award lodestar multipliers of up to eight times the lodestar, and in some cases, even higher multipliers. Here, Plaintiffs' Counsel do not seek a lodestar multiplier, but rather will almost certainly recover less than their actual

18

loadstar.") (quotation marks and citations omitted). *See also Osman v. Grube, Inc.*, No. 3:16-cv-00802-JJH, 2018 WL 2095172, at *3 (N.D. Ohio May 4, 2018) ("A percentage-of-the-fund attorneys' fee award is reasonable when it amounts to double the loadstar attorneys' fees incurred by the plaintiffs' counsel."); *Devlin*, 2016 WL 7178338, at *10 ("Class Counsel's request for $516,667.00 in fees represents a multiplier of approximately 2.32 of the lodestar amount . . . Multiples ranging from 1 to 4 are often used in common fund cases."); *Smith*, 2007 WL 119157, at *3 (awarding fee with a "multiplier of approximately 1.6 over the lodestar").

The Court should also order the reimbursement of counsel's litigation expenses. *See, e.g.*, *Smith*, 2007 WL 119157, at *3-4 ("An attorney who creates or preserves a common fund by judgment or settlement for the benefit of a class is entitled to receive reimbursement of reasonable fees and expenses involved . . . . Class Counsel's request for reimbursement of actual expenses incurred to date totaling $87,433.32 is hereby approved as fair and reasonable."); *Day*, 2018 WL 2473472, at *2 (awarding 1/3 of gross common benefit fund as attorneys' fees and reimbursing all expenses); *Osman*, 2018 WL 2095172, at *6 (same); *Graudins*, 2017 WL 736684, at *12 (same); *Devlin*, 2016 WL 7178338, at *11 (same); *Bozak*, 2014 WL 3778211, at *7 (approving "over $30,557.00 in out of pocket costs prosecuting this case, including costs for electronic research, court fees, court reporters, deposition transcripts, postage and courier fees, working meals, photocopies, telephone calls, travel and Plaintiffs' portion of the mediator's fees," as well as $686,666.66 for attorneys' fees).

**IV. The requested service fee award is reasonable.**

The requested $5,000 service fee award for Hood's active participation in the litigation "is comparatively on the lower end of awards deemed reasonable." *Thompson*, 2018 WL 2183988, at *3. *See also Osman*, 2018 WL 2095172, at *2 ($7,500); *Day*, 2018 WL 2473472, at *2 ($7,000); *Graudins*, 2017 WL 736684, at *9 ($7,500); *Devlin*, 2016 WL 7178338, at *11 ($7,500); *Bozak*, 2014 WL 3778211, at *4 ($10,000); *Smith*, 2007 WL 119157, at *4 ($15,000).

**V. The Court should certify the settlement class.**

"Having conditionally certified the FLSA collective, [the Court] now must make a conclusive determination as to whether each plaintiff who has opted in to the collective action is in fact similarly situated to the named plaintiff." *Graudins*, 2017 WL 736684, at *5 (quotation marks omitted). *See also Edelen v. Am. Residential Servs.*, LLC, No. DKC 11-cv-2744, 2013 WL 3816986, at *4 (D. Md. July 22, 2013) (when parties agree to settle an FLSA dispute on behalf of a collective of similarly-situated employees, a final determination must be made regarding the appropriateness of certification).

Here, all Plaintiffs are current or former users of the Uber application. Although they allege differing numbers of hours worked and thus different damages, all present the common claim that they were misclassified as independent contractors and that they are owed back wages. *See, e.g.*, *Rehberg v. Flowers Baking Co. of Jamestown, LLC*, 2015 WL 1346125, at *8, 16 (W.D.N.C. Mar. 24, 2015) (concluding that "the similarities between the Plaintiffs' claims far outweigh their differences" because "[w]hile each distributor may have carried out the essential functions of his job slightly differently, . . . all distributors were instructed to carry out their jobs subject to the Distributor Agreement, had substantially similar job duties,

were subject to a common policy of being classified as independent contractors, and now claim violations . . . based on this classification."); *id.* at *17 ("Given that Defendants ha[d] a well-established company policy of classifying all distributors as independent contractors, the court is less concerned by the variations in Plaintiffs' employment circumstances.").

<u>**CONCLUSION**</u>

The settlement agreement is fair and reasonable. Accordingly, Hood requests that the Court enter the proposed approval order and dismiss this action with prejudice.

Dated: October 16, 2018

Respectfully submitted,

*/s/ Paul B. Maslo*
Paul B. Maslo (admitted *pro hac vice*)
NAPOLI SHKOLNIK PLLC
360 Lexington Avenue, 11th Floor
New York, New York 10017
Telephone: (212) 397-1000
Facsimile: (646) 843-7603
Email: pmaslo@napolilaw.com

Paul R. Dickinson, Jr.
N.C. Bar Number: 20510
DEMAYO LAW OFFICES, LLP
1211 E. Morehead St.
Charlotte, North Carolina 28204
Telephone: (704) 333-1000
Fax: (704) 333-6677
Email: pdickinson@demayolaw.com

Brittany S. Weiner (admitted *pro hac vice*)
IMBESI LAW PC
450 Seventh Avenue, Suite 1408
New York, NY 10123
Email: brittany@lawicm.com

*Counsel for Plaintiffs*

21

## <u>CERTIFICATE OF WORD COUNT</u>

The undersigned attorney certifies that this memorandum of law contains 5,879 words according to the word count feature in Microsoft Word. This count excludes the caption and signature blocks.

<u>/s/ Paul B. Maslo</u>