IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA
1:16-CV-998

MICHAEL HOOD, individually, and on
behalf of all others similarly situated,

        Plaintiffs,

v.

UBER TECHNOLOGIES, INC., RASIER,
LLC, AND JOHN DOES I-V,

        Defendants.

1:16-CV-998

## MEMORANDUM OPINION

Catherine C. Eagles, District Judge.

In this Fair Labor Standards Act collective action, plaintiff Michael Hood seeks

approval of a proposed settlement agreement with the defendants, Uber Technologies and

Rasier, LLC. The Court concludes that Mr. Hood and class counsel have authority to

settle the case on behalf of the opt-in class and that the settlement is a fair and reasonable

resolution of a *bona fide* dispute of FLSA provisions.

## I.     Procedural History and Background

Mr. Hood sued Uber, its subsidiary Rasier, and ten of its unnamed agents and

managers in July 2016. Doc. 1 at 1 ¶ 11. Mr. Hood filed an amended complaint in

October with eight claims, including seven North Carolina statutory and common-law

causes of action and one claim for violations of the Fair Labor Standards Act. Doc. 15.

Upon the defendants' motion, the Court dismissed six counts in their entirety, Doc. 65,

and the parties stipulated to the dismissal of one more count, Doc. 131, after which only the Fair Labor Standards Act claim remained.

In July 2017, the Court granted conditional class certification for "all natural persons who have worked or who continue to work as an Uber Driver anywhere in the United States and who have opted out of arbitration" under 29 U.S.C. § 216(b). Doc. 126. The Court ordered the parties to notify putative class members of the lawsuit, with a 90-day period for them to opt in. Doc. 165 (Mag. J., Order).

The notice sent to potential class members stated that those who chose to opt in would "be bound by any settlement or judgment . . . whether favorable or unfavorable" and would "be represented by Plaintiff's counsel." Doc. 164-1 at 2–3. In the consent form for opting in, class members agreed to "be bound by any adjudication or ruling of the Court, whether favorable or unfavorable," and to "be represented by Napoli Shkolnik PLLC." *Id.* at 5.

Approximately 5,200 class members opted in to the litigation by submitting consent forms. *See, e.g.*, Docs. 168, 171–345 (declarations), 346–418 (notices of consents); Settlement Hearing, Dec. 14, 2018 (class counsel's representation that approximately 5,200 class members had opted into the litigation). After the opt-in period closed, Mr. Hood and class counsel participated in mediation and engaged in further settlement negotiations with the defendants. Doc. 425 at 5; Doc. 424-1 at 1. Uber gathered information on each class member's work with Uber and provided it to class counsel before the mediation, which allowed counsel to calculate individual damages under a variety of scenarios. Doc. 424-1 at 10.

2

After the parties reach an agreement, Mr. Hood filed an Unopposed Motion for Approval of FLSA Settlement and Dismissal of Action with Prejudice, Doc. 424, attaching the proposed settlement agreement. Doc. 425-2 at 2–27. He also attached the exhibits to the agreement, including the list of class members and their settlement allocations, *id.* at 28–131, a proposed approval order, *id.* at 133–35, a proposed notice to class members of the settlement, *id.* at 137, and a revised technology agreement to which class members with active Uber accounts would agree under the terms of the settlement agreement. *Id.* at 139–59. The Court required additional submissions, *see* Doc. 429, which the parties provided. *See* Doc. 430.

The Court held a fairness hearing on December 14, 2018. Counsel for all parties appeared. Minute Entry 12/14/2018.

## II.  The Settlement Agreement

The settlement agreement provides that a settlement administrator will send each class member who agreed to participate in the lawsuit a letter notifying them that Court has approved the settlement and dismissed the case, along with a check for the class member's share. Doc. 425-2 at 9–10, 137. Under the agreement, Uber will pay a maximum gross settlement amount of $1,304,250. *Id.* at 4. Of that total, the parties agreed that $734,294.74 (56.3%) would go to class plaintiffs that have opted in, $434,750 (33%) would be paid in attorneys' fees, and $90,205.26 (6.9%) would go towards litigation expenses. *Id.* at 5–6. Of the remaining 3.5%, the parties agreed that $5,000 would compensate the named plaintiff for his assistance to the case and $40,000 would compensate the settlement administrator. *Id.*

3

Each class member will receive a payment based on the hours worked and expenses incurred, as set forth in a table appended as Exhibit A to the settlement agreement. *Id.* at 5, 29–131. These amounts range from $50 to almost $5,000, *see id.* at 159, and the average recovery for class members is about $140.

In exchange for the monetary payments, the settlement agreement requires a detailed release of claims by and imposes affirmative obligations on class members. *Id.* at 12–18. Class members who have deactivated Uber accounts or who have not fulfilled a ride request on the Uber application for at least one month before the date of execution, September 28, 2018, waive their right to future account reactivation and agree not to seek or accept future account activation or reactivation. *Id.* at p. 16 ¶ 5.1, p. 22. Class members with active Uber accounts agree to be bound by a new technology services agreement and to waive their rights to opt out of the arbitration provisions in this or future agreements with Uber. *Id.* pp. 16–17 ¶ 5.2. These terms bind all class members who have opted in regardless of whether they cash their settlement check. *See id.* at p. 12 ¶ 3.8. The release of claims also binds individuals even if the settlement administrator uses the incorrect address or another person cashes a class member's check. *See id.* at p. 12 ¶ 3.9.

The proposed notice to class members initially did not include a description of the terms of the settlement or include a copy of the settlement agreement and its exhibits. *See* Doc. 425-2 at 137. In supplemental briefing, counsel agreed to set up a password-protected website where class members could view the settlement terms and to include the website's URL in the notice of the settlement to class members. Doc. 430 at 8.

4

### III.    Class Counsel's Authority to Settle

The opt-in notice sent to class members advised in two places that if they elected to join the lawsuit, they would be "bound by any settlement or judgment," Doc. 164-1 at 2, 3, including results "favorable or unfavorable." *Id.* at 2. In a third place, it informed drivers that if they did not join the lawsuit, they would "not be affected by any FLSA-related judgment or settlement in this case." *Id.* at 3. While the consent form signed by class members did not explicitly authorize class counsel or Mr. Hood to settle the case on their behalf, the signing class members did agree that class counsel would represent them and that they would "be bound by any adjudication or ruling of the Court, whether favorable or unfavorable." *Id.* at 5. In the circumstances of this case, the Court concludes that class counsel and Mr. Hood had authority to settle the case without further consultation with or approval by class members.

Attorneys generally must consult with their clients before settling a matter on their behalf. N.C. R. Prof'l Cond. Rule 1.2(a)(1). They have no implied authority to settle a matter without the client's consent, *Auvil v. Grafton Homes, Inc.*, 92 F.3d 226, 230 (4th Cir. 1996), and no specific provision of the Fair Labor Standards Act establishes a different rule for collective actions under the FLSA. *See* 29 U.S.C. § 216(b) (allowing an individual to bring action "for and in behalf of himself . . . [and] other employees similarly situated" but not addressing settlement authority). Thus, counsel for the opt-in class may not agree to a class-wide settlement without the consent of each class member. *See generally* Allan G. King & Andrew Gray, *The Unanimity Rule: "Black Swans" and Common Questions in FLSA Collective Actions*, 10 Fed. Cts. L. Rev. 1, 14 (2017).

In FLSA cases, opt-in class members often authorize class counsel or the named plaintiff to settle the case for them, and courts have approved such explicit authorizations. *See, e.g.*, Consent to Become a Party Plaintiff, *McClean v. Health Sys. Inc.*, No. 6:11-cv-03037- DGK, Doc. 168-1 (W.D. Mo. Feb. 8, 2012) (providing that class members "designate the named Plaintiff(s) and their attorneys as my representatives to make decisions on my behalf concerning the litigation . . . and decisions regarding settlement"); Consent to Join FLSA Lawsuit, *Salinas v. U.S. Xpress Enters., Inc.*, No. 1:13-CV-00245-TRM-SKL, Doc. 52-1 at 1 (E.D. Tenn. Sept. 10, 2014) (designating class counsel and the named plaintiff as class members' "agents in making decisions on my behalf in this litigation, including entering into settlement agreements pertaining to this matter"); *see also Halle v. W. Penn Allegheny Health Sys., Inc.*, 842 F.3d 215, 230 (3d Cir. 2016) (finding class members waived their right to individually appeal when they signed consent forms stating they "authorize and designate the named plaintiffs to act on my behalf concerning the litigation . . . consideration of settlement and . . . all other matters pertaining to this lawsuit"). Here, however, the consent form signed by class members did not explicitly provide such settlement authority to class counsel or to Mr. Hood.

Nonetheless, there are other facts indicating that the class members authorized class counsel and Mr. Hood to settle the case on their behalf, either by express authority or by apparent authority. First, the notice to class members explicitly mentioned settlement three times and twice informed class members that if they elected to join the lawsuit, they would be "bound by any settlement." Doc. 164-1 at 2, 3. The notice also expressly stated that class members would be bound by the result of the case, even if it

6

was unfavorable. *Id.* at 2. Nothing in the class notice or the consent form indicated that counsel would consult with class members before settlement.

The Court can assume class members read and understood the short and clear notice they received and the consent form they signed and submitted. First, the notice is objectively clear. Second, courts generally presume that readers of important documents have a basic level of understanding and willingness to read with care. *See, e.g., United States v. Nat'l Fin. Servs., Inc.*, 98 F.3d 131, 136 (4th Cir. 1996) (noting presumption in FDCPA cases involving collection letters); *Chapman v. Allied Van Lines, Inc.*, No. 5:15-CV-00615-BR, 2018 WL 701627, at *10 (E.D.N.C. Feb. 2, 2018) (noting in Carmack Amendment case that "courts must presume that person who signs a contract has read it in its entirety"). Finally, class members here affirmatively took action to opt out of arbitration when they signed up to be Uber drivers, indicating that they carefully examine materials related to their work. *See* Doc. 126 (certifying a class of individuals who "opted out of arbitration"); Doc. 69 at ¶¶ 8–10, 15–16 (describing process by which drivers agree to Uber terms and conditions and can opt out of arbitration).

Arguably, the class notice and the signed consent form, read together, provide express authority for counsel and Mr. Hood to settle the case on behalf of the opt-in class members. The Court need not reach this question since the facts otherwise show that class counsel and Mr. Hood had apparent authority. In the absence of express authority, an attorney has apparent authority to settle a case when his client, "through his acts or omissions, causes a third party, in good faith and in the exercise of reasonable prudence, to rely on the agent's authority to act on the principal's behalf."

7

*Auvil*, 92 F.3d at 230. Under these circumstances, the agent can bind the principal.

Here, the class members signed a consent form in which they agreed to be represented by class counsel and agreed to "be bound by any adjudication or ruling of the Court, whether favorable or unfavorable." Doc. 164-1 at 5. These consent forms were signed after the class members received a notice that twice told them they would be "bound by any settlement or judgment" if they joined the action. *Id.* at 2, 3. And, as noted *supra*, the class members had previously shown themselves to be sophisticated readers of form documents. Under these circumstances, the defendants reasonably and in good faith relied on class counsel's authority to settle the matter on behalf of the class.

In hindsight, the consent form should have contained explicit settlement authority, if the parties were not contemplating giving the opt-in class members an opportunity to accept or reject the negotiated settlement. That said, the Court is satisfied under the circumstances of this case that class members conferred apparent authority on class counsel and Mr. Hood to execute the settlement on their behalf.

## IV.    Settlement Terms and Attorney's Fees

To approve an FLSA settlement, district courts in this circuit evaluate whether a settlement reflects "a fair and reasonable resolution of a *bona fide* dispute over FLSA provisions" by applying the considerations set forth by the Eleventh Circuit in *Lynn's Food Stores*. *Duprey v. Scotts Co. LLC*, 30 F. Supp. 3d 404, 407–08 (D. Md. 2014) (referencing *Lynn's Food Stores, Inc. v. United States*, 679 F.2d 1350 (11th Cir. 1982) and collecting cases). These considerations include "(1) whether there are FLSA issues

8

actually in dispute, (2) the fairness and reasonableness of the settlement . . . and (3) the reasonableness of the attorneys' fees . . . ." *Duprey*, 30 F. Supp. 3d at 408.

There is a *bona fide* dispute over FLSA provisions in this matter. The plaintiffs contend Uber misclassified them as independent contractors and that they are instead employees entitled to minimum wage and overtime. Doc. 15 at ¶¶ 4, 207–17 (Count VIII of the Amended Complaint). Defendants disagree and have offered a vigorous defense to date. Doc. 74 at ¶¶ 4, 207–217. They have also prevailed on this issue in another court for a similar group of drivers. *See Razak v. Uber Techs., Inc.*, No. 16-573, 2018 WL 1744467, at *19 (E.D. Pa. Apr. 11, 2018) (granting Uber's motion for summary judgment because plaintiffs, UberBLACK drivers, did not meet their burden of showing they are Uber employees). This disagreement is a "genuine dispute[] that support[s] the concept of a negotiated settlement of this FLSA claim." *See Rivera v. Dixson,* No. TDC-14-cv-2901, 2015 WL 427031, at *3 (D. Md. Jan. 30, 2015).

"Although the Fourth Circuit has not directly addressed the relevant factors the court should consider when determining whether a FLSA collective action settlement is fair and reasonable, district courts within the circuit have generally considered the fairness factors a court would consider under Federal Rule of Civil Procedure 23(e)." *Latham v. Branch Banking & Tr. Co.*, No. 1:12-CV-00007, 2014 WL 464236, at *1 (M.D.N.C. Jan. 14, 2014). These include "(1) the extent of discovery that has taken place; (2) the stage of the proceedings, including the complexity, expense and likely duration of the litigation; (3) the absence of fraud or collusion in the settlement; (4) the experience of counsel who have represented the plaintiff; (5) the probability of plaintiff's

success on the merits and the amount of the settlement in relation to the potential recovery." *In re Dollar Gen. Stores FLSA Litig.*, No. 5:09-MD-1500, 2011 WL 3904609, at *2 (E.D.N.C. Aug. 23, 2011) (Mag. J., Memorandum and Recommendation), *adopted by Basnight v. Dolgencorp, Inc.*, 2011 WL 3841658, at *1 (E.D.N.C. Aug. 30, 2011); *accord Latham,* 2014 WL 464236, at *1. Evaluated in light of these factors, the settlement is fair and reasonable.

The parties have not engaged in formal discovery, but they have exchanged a 322,215-line spreadsheet reflecting weekly hourly data for class member drivers. *See* Doc. 424-1 at 10. Class counsel has also reviewed the summary judgment records in parallel lawsuits over the same issue in California and Pennsylvania. *Id.* at 11. The Court agrees and finds that these measures allowed the parties to adequately assess the claims and defenses. *See In re Dollar Gen. Stores FLSA Litig.*, 2011 WL 3904609, at *3.

The Court has issued orders on class certification and Uber's motion to dismiss, narrowing the issues in the case. The parties would likely incur substantial costs by engaging in discovery for the 5,200 drivers who have opted in, by litigating motions for summary judgment, and by trying the case. Settlement is thus appropriate at this stage in the proceedings.

The parties negotiated with a mediator's assistance to reach this agreement. Doc. 425 at 5; Doc. 424-1 at 1. This, in addition to the record of contested issues in this case, indicates they engaged in "arm's-length negotiations" without fraud or collusion, and there is nothing to indicate to the contrary. *See, e.g., Day v. NuCO2 Mgmt, LLC*, No.

1:18-cv-02088, 2018 WL 2473472, at *1 (N.D. Ill. May 18, 2018); *Devine v. City of Hampton, Va.*, No. 4:14cv81, 2015 WL 10793424, at *2 (E.D. Va. Dec. 1, 2015).

The affidavits submitted also support that class counsel are well qualified. *See* Doc. 424-1 at 5–6 (summarizing qualifications); Doc. 425 at ¶¶ 29–39 (Maslo decl.); Doc. 427 at ¶¶ 4–5, 7 (Weiner decl.); Doc. 426 at ¶¶ 1–13 (Dickenson decl.).

The plaintiffs contend defendants have a "significant chance" of either prevailing on the merits, by a finding that drivers are independent contractors, or of achieving a reduction of liability if Uber is not required to compensate for driver "wait time." Doc. 424-1 at 13–14. The recent decision in *Razak*, currently on appeal, supports the existence of significant risk Uber would prevail on the merits, since the Eastern District of Pennsylvania determined that UberBLACK drivers had "not brought to the record sufficient proof to meet their burden of showing that they are employees" and granted summary judgment for Uber. *Razak*, 2018 WL 1744467, at *19. The decision applies six factors outlined in the Third Circuit decision in *Donovan v. DialAmerica Marketing, Inc.*, which are largely the same as those applied by the Fourth Circuit. *Id.* at 8. *Compare McFeely v. Jackson St. Entm't, LLC.*, 825 F.3d 235, 241 (4th Cir. 2016), *with Donovan v. DialAmerica Mktg, Inc.,* 757 F.2d 1376, 1382 (3d Cir. 1985).

Plaintiffs have calculated a projected damages ceiling in this matter of $3,374,894. Doc. 424-1 at 4. The settlement agreement provides for a maximum gross settlement amount of approximately 39% of this ceiling, $1,304,250. Doc. 425-2 at p. 4–5 ¶ 1.15. This is a reasonable amount, given the summary judgment rulings in *Razak* and the costs

11

and risks of proceeding to trial. It is significantly more than a *de minimis* recovery, and it offers some compensation to each class member based on his or her work hours.

As to the release and affirmative obligations binding on all class members, these non-monetary terms are also reasonable. The Court is "entitled to rely on the judgment of experienced counsel" to evaluate a proposed settlement, and "absent fraud, collusion or the like, a court should be hesitant to substitute its own judgment for that of counsel." *Lomascolo v. Parsons Brinckerhoff, Inc.*, No. 1:08cv1310, 2009 WL 3094955, at *10 (E.D. Va. Sept. 28, 2010). Class counsel here is experienced and believes that the settlement overall reflects a fair and reasonable result for their clients. A review of the non-monetary terms confirms this view.

The release includes all possible claims in the present action or those resulting from any class member's relationship with Uber before the Court issues the order approving settlement, but it does not include claims asserted in parallel actions. Doc. 425-2 at 12–13. Nor does it include any release of future claims over the same issue which arise after the settlement. There is nothing unlawful about a requirement that drivers with active Uber accounts abide by a new technology agreement and agree to waive their right to opt out of any future arbitration agreement, which, while it serves to prevent future collective actions, still allows individual actions. *See Epic Sys. Corp. v. Lewis*, 584 U.S. __, 138 S. Ct. 1612, 1619 (2018) (upholding contract provision compelling individual arbitration and waiving rights to collective actions under FLSA).

The Court had initial concerns about the provision in which class member drivers with deactivated accounts agree not to apply to work with Uber again. *See* Doc. 425-2 at

p. 16 ¶ 5.1. One could argue that this is contrary to the opt-in notice's assurance that Uber would not retaliate against class members for joining the lawsuit and to the FLSA's non-retaliation clause. *See Jackson v. Mayor & City Council of Baltimore City*, No. JFM 08-3103, 2009 WL 2060073, at *8 (D. Md. July 14, 2009) (finding plaintiff established a prima facie case of FLSA retaliation given the temporal proximity between the settlement of the previous case and his termination).

However, the provision has only limited application: it only impacts those with deactivated accounts or accounts with limited use, not those currently relying on Uber for income, and it serves the legitimate purpose of limiting Uber's litigation risk in the future from rejections made for otherwise legitimate reasons and without knowledge by the decision-maker that the driver was a member of this class.[1] And, of course, the class member drivers are receiving monetary compensation in exchange for this and other promises in the settlement agreement, so this term does not undermine the purpose of the non-retaliation clause. *See Darveau v. Detecon, Inc.*, 515 F.3d 334, 340 (4th Cir. 2008) (noting that the purpose of the non-retaliation clause is to "remov[e] 'fear of economic retaliation' so that employees need not 'quietly . . . accept substandard conditions.'" (quoting *Mitchell v. Robert De Mario Jewelry, Inc.*, 361 U.S. 288, 292 (1960)). When viewed "in light of the particular circumstances of the case," these non-monetary terms

---

[1] In the settlement hearing, Uber's counsel represented that the parties added this provision to prevent claims of retaliation arising out of any decision by Uber to reject reactivation requests from class members with deactivated or out-of-use accounts—which Uber could do for "any number of perfectly legitimate business reasons"—and not out of retaliatory animus. Settlement Hearing, Dec. 14, 2018.

are fair and reasonable, and the Court declines to "depart from the longstanding 'public policy favoring voluntary resolution of the disputes.'" *Duprey*, 30 F. Supp. 3d at 411 (quoting *Digital Equip. Corp. v. Desktop Direct, Inc.*, 511 U.S. 863, 881 (1994)).

The Court also finds the requested attorney's fees and costs to be reasonable. The Fourth Circuit uses the lodestar method for determining a reasonable fee in an FLSA collective action. *See Lyle v. Food Lion, Inc.*, 954 F.2d 984, 988 (4th Cir. 1992); *Duprey*, 30 F. Supp. 3d at 411–12. The lodestar amount is defined as a reasonable hourly rate multiplied by hours reasonably expended, and an hourly rate is reasonable if it is in line with those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience, and reputation. *Duprey*, 30 F. Supp. 3d at 412.

The Fourth Circuit also considers twelve factors to evaluate the reasonableness of an award of attorneys' fees in FLSA cases, including "(1) the time and labor expended; (2) the novelty and difficulty of the questions raised; (3) the skill required to properly perform the legal services rendered; (4) the attorney's opportunity costs in pressing the instant litigation; (5) the customary fee for like work; (6) the attorney's expectations at the outset of the litigation; (7) the time limitations imposed by the client or circumstances; (8) the amount in controversy and the results obtained; (9) the experience, reputation and ability of the attorney; (10) the undesirability of the case within the legal community in which the suit arose; (11) the nature and length of the professional relationship between attorney and client; and (12) attorneys' fees awards in similar cases." *Barber v. Kimbrell's, Inc.*, 577 F.2d 216, 226 n.28 (4th Cir. 1978).

The settlement agreement provides for a maximum gross settlement amount of $1,304,250. Doc. 425-2 at 4 ¶ 1.15. Of that total, the parties propose that exactly one-third, or $434,750, be paid in attorneys' fees, in addition to $90,205.26 (6.9%) as reimbursement for litigation expenses. Doc. 425-2 at 5–6.

The $434,750 in fees class counsel request is significantly less than the total $965,015.75 in fees incurred, using the lodestar method. Counsel have presented detailed time entries to support these amounts. Doc. 425-3 (Maslo); Doc. 425-4 (Dressel); Doc. 425-5 (May); Doc. 426-1 (Dickinson); Doc. 427-1 (Weiner). The hourly rates applied are based on either "standard billing rate[s]," Doc. 425 at ¶ 41 (Maslo rate of $850), ¶ 42 (Dressel rate of $550), ¶ 43 (May paralegal rate of $125), "an accepted and customary rate in North Carolina and the Middle District," Doc. 426 at ¶ 16 (Dickinson rate of $385), or a rate lower than what "clients regularly accept and pay." Doc. 427 at ¶ 14 (Weiner rate of $500).

Applying the total proposed fee of $434,750 to the total 1,456.35 hours for four attorneys and a paralegal, *see* Doc. 425 at ¶ 41–43; Doc. 426 at ¶ 15; Doc. 427 at ¶ 13, results in an average rate of approximately $300 dollars per hour. This average rate is reasonable when compared to publicly-available attorney fee tables for metropolitan areas, *see* Laffey Matrix, *available at* http://www.laffeymatrix.com/see.html (last accessed Dec. 27, 2018), and the overall fee award is consistent with fees previously approved by this Court for FLSA claims. *See* Order and Judgment, *Corbin v. CFRA, LLC.*, Case No. 1:15-cv-00405 (M.D.N.C. Feb. 5, 2018), Doc. 93 (approving settlement

15

agreement, Doc. 88-1, providing for attorney's fees of one-third of $1,725,000 gross settlement fund and $111,393.30 in costs).[2]

## V.     Conclusion

Class counsel have settled this matter under the apparent authority conferred by class members when they responded to a class notice that informed them they would be bound by any settlement if they consented to join this action. The settlement reached is a fair and reasonable resolution of a *bona fide* dispute of FLSA provisions, and the requested attorney's fees, costs, and other compensation are also reasonable. For these reasons, the Court has granted Mr. Hood's unopposed motion for approval of his settlement, as set forth in the order filed on December 28, 2018. *See* Doc. 435.

This the 3rd day of January, 2019.

_____
UNITED STATES DISTRICT JUDGE

---

[2] Counsel contends that an award of one-third of the gross common fund is appropriate and appears to assert that the Court need not apply the lodestar method. Doc. 424-1 at 15. While certainly a contingent fee arrangement may be relevant in evaluating whether a fee award is reasonable, a fee award based on this alone would seem to be inconsistent with Fourth Circuit precedent. *Lyle*, 954 F.2d at 988. The Court need not reach this issue, as the fee award requested is well less than the lodestar amount.

16